**Alan J. MISHLER, M.D.,**
**Plaintiff-Appellant,**

v.

**ST. ANTHONY'S HOSPITAL SYSTEMS,**
**a private non-profit corporation; Daniel**
**Dracon, M.D., individually, and as Emer-**
**gency Room Director of St. Anthony's**
**Hospital Systems, Defendants-Appel-**
**lees.**

No. 79–2078.

United States Court of Appeals,
Tenth Circuit.

Nov. 2, 1981.

Sidney W. DeLong of Dunn, Crane & Burg, Denver, Colo., for plaintiff-appellant.

Donald A. Klene of Casey, Klene, Horan & Wegs, Denver, Colo., for defendant-appellee St. Anthony's Hosp. Systems.

Brian J. Lampert, Denver, Colo. (Mary Butler also of Johnson & Mahoney, Denver, Colo., on the brief), for defendant-appellee Daniel Dracon, M.D.

Before SETH, Chief Judge, and HOLLOWAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Alan J. Mishler, M.D., appeals the district court's dismissal for lack of jurisdiction of his antitrust claims against St. Anthony's Hospital Systems (St. Anthony's or hospital) and its emergency room director, Daniel Dracon, M.D. The sole issue on appeal is whether Dr. Mishler pleaded facts sufficient to meet the jurisdictional requirements of the Sherman Act, 15 U.S.C. §§ 1, 2.

Dr. Mishler, a neurosurgeon, claims that the defendants are part of a conspiracy to

destroy competition and monopolize emergency neurosurgery in Colorado and portions of nearby states, the region served by St. Anthony's, by restraining him and others from practicing emergency neurosurgery at the hospital. The defendants allegedly are accomplishing this goal by excluding Dr. Mishler and other neurosurgeons from the emergency room referral list. The complaint asserts that because of the hospital's size and its sponsorship of the region's only air ambulance service, the vast majority of patients from the geographic area requiring emergency neurosurgery go to St. Anthony's, and that almost invariably patients' families follow the emergency room physicians' recommendation of a doctor. Thus, although Dr. Mishler has hospital staff privileges, he cannot practice emergency neurosurgery since he is not on the hospital's referral list.

The amended complaint alleges that this conspiracy affects three channels of interstate commerce: commerce arising out of the interstate movement of patients; commerce in medical insurance from out-of-state sources; and commerce in supplies purchased from outside the state.

The district court granted a Fed.R.Civ.P. 12(b) motion to dismiss the complaint because Dr. Mishler failed to show that the conspiracy had the effect on interstate commerce the court believed necessary to support jurisdiction under the Sherman Act. The court reasoned that the restraint was local in character; the failure to refer patients to Dr. Mishler in no way would diminish the number of out-of-state patients utilizing the hospital, reduce the supplies purchased from outside the state, or decrease the revenues generated from emergency neurosurgical services. Thus, the district court required Dr. Mishler to show that the conspiracy diminished interstate commerce, and found that he had not done so. Dr. Mishler maintains that he does not have to prove that the conspiracy diminished interstate commerce. Further, inasmuch as he alleged a monopolization of the market, Dr. Mishler asserts that interstate commerce was necessarily adversely affected.

A federal court has jurisdiction under the Sherman Act if the plaintiff establishes either that the challenged activity occurs within the flow of interstate commerce or that the activity, although wholly local in nature, substantially affects interstate commerce. *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980); *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715, 720 (10th Cir.1980) (on rehearing en banc). We need not decide whether jurisdiction may exist under the "in commerce" theory, since the allegations are so close to those in *Crane v. Intermountain Health Care, Inc.* that our interpretation of the "effects" test there controls our decision here.

In *Crane* we dispelled any notion that providing medical services is *per se* a local activity not subject to the Sherman Act. 637 F.2d at 725–26. In applying the "effects" test, this Court held that dismissing Dr. Crane's suit for lack of jurisdiction was premature since his pleading alleged by implication that the purported conspiracy to boycott Crane's services as a consultant in pathology affected three separate channels of interstate commerce. *Id.* at 725. At the pleading stage, Dr. Crane's allegations were sufficient because we could not say beyond doubt that he could "prove no set of facts to show the required effect on interstate commerce." *Id.* at 724.

The channels discussed in *Crane* are precisely those Dr. Mishler alleges in the instant case: (1) commerce in medical insurance from out-of-state sources, (2) commerce in the form of supplies from out-of-state sources, and (3) commerce in the form of interstate patients using the defendant hospital. Dr. Mishler's complaint alleges a conspiracy to exclude competition and to monopolize a service affecting these three separate channels of commerce. Although Dr. Mishler must eventually prove a not insubstantial effect on interstate commerce, *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. at 246, 100 S.Ct. at 511, his complaint merely must identify the relevant channels of interstate commerce and their

relationship to the challenged activities. *Crane*, 637 F.2d at 725. The amended complaint has met this requirement.

■ Additionally, even at trial Dr. Mishler is not required to show that the flow of interstate commerce is diminished; an unreasonable burden on commerce may exist even though the anticompetitive conduct may increase interstate commerce. *Harold Friedman, Inc. v. Thorofare Markets, Inc.*, 587 F.2d 127, 132 & n. 14 (3d Cir.1978); P. Marcus, *Antitrust Law and Practice* 86 (1980). Simply by looking at the pleadings, we cannot say with certainty that Dr. Mishler will be unable to show the effect he alleges the challenged activities have on interstate commerce.

■ Additionally, we cannot say from the pleadings that this case involves a mere private wrong in which revenues were diverted from one set of doctors to another, and thus fails to demonstrate the requisite harm to the public. We assume that doctors do not all deliver identical services for identical fees. Restraints of trade and monopolization inherently involve injury to the public and competition. *Almeda Mall, Inc. v. Houston Lighting & Power Co.*, 615 F.2d 343, 351 (5th Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

The case is reversed and remanded for further proceedings consistent herewith.

HOLLOWAY, Circuit Judge, concurring specially:

I agree with the reversal and remand of this case. This separate statement is made merely to say that while I agree fully with that disposition and most of the majority opinion, my own conviction remains as it was stated in my separate opinion, concurring and dissenting, in *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 727 (10th Cir.), as to the holding of *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441.

As there explained, I do not construe *McLain* as did the en banc opinion in our *Crane* case. For this reason, I would not focus on the defendants' "challenged activi-

ty"—apparently confined to the allegedly unlawful conduct—as the majority opinion here does and as the *Crane* opinion did in connection with the jurisdictional showing required. Rather, I would focus on the "defendants' activity," as the Supreme Court did explicitly in *McLain*, 444 U.S. at 242, 100 S.Ct. at 509, thus considering whether such activity is itself in interstate commerce or, if local in nature, whether "defendants' activity" has "an effect on some other appreciable activity demonstrably in interstate commerce," 444 U.S. at 242, 100 S.Ct. at 509, and not requiring a jurisdictional "showing that the unlawful conduct itself had an effect on interstate commerce," *id.* at 243, 100 S.Ct. at 509—a test explicitly rejected by the Supreme Court.

Nevertheless, while I wish to state these views clearly, I fully agree that the complaint should not have been dismissed here and realize that the majority opinion does follow and apply our en banc *Crane* opinion accurately.