Edward F. QUINN, III, Plaintiff,

v.

KENT GENERAL HOSPITAL, INC., a Delaware corporation, Dennis E. Klima, James R. Reber, James B. McClements, M.D., T. Noble Jarrell, M.D., J. Robert Fox, M.D., and John C. Sewell, M.D., Defendants.

Civ. A. No. 84–509 CMW.

United States District Court, D. Delaware.

Dec. 3, 1987.

William J. Wier, Jr., and Joseph G. Krauss, Herlihy & Wier, Wilmington, Del., for plaintiff.

Myron T. Steele, Prickett, Jones, Elliott, Kristol & Schnee, Dover, Del. (Eric W. Springer, Horty, Springer & Mattern, P.C., Pittsburgh, Pa. of counsel), for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This summary judgment motion arises out of an antitrust suit filed by Dr. Edward F. Quinn, III, against Kent General Hospital, Inc. ("KGH"), and several individual doctors who practice at KGH for denying him active staff privileges at KGH. Quinn requested that the defendants admit that

the Sherman Act's interstate commerce requirement had been met, and that this Court thus had subject matter jurisdiction over the dispute, but the defendants refused. Quinn then filed this Motion for Summary Judgment on the interstate commerce issue. The Court grants Quinn's Motion and holds that Quinn has met the Sherman Act's interstate commerce requirement.

## I.  BACKGROUND

Dr. Quinn is an orthopedic surgeon who practices in the Dickinson Medical Group ("Dickinson"), a professional association of which he is the president and founder. Dickinson has clinics in Georgetown, Milford, and Dover, Delaware. The Dover clinic is located across the street from defendant KGH and contains residential facilities. Quinn and the other doctors of Dickinson reside in Milford, Delaware, more than twenty miles from KGH. KGH is a nonprofit hospital located in Dover, Delaware. The other defendants are members of the active staff of KGH as well as the executive and associate executive directors of KGH.[1]

This dispute arose when Dr. Quinn applied for greater privileges at KGH. He was originally granted the status of a consulting staff member. Because only active staff members can admit patients to KGH, Quinn sought to change his status to that of an active staff member. Quinn's request was denied because the hospital claimed that his primary residence, in Milford, and his primary office, also in Milford, were located too far from KGH. This violated Article II, Part A, of the Hospital Medical Staff Bylaws ("the bylaw") which states that active members must maintain a residence a "reasonable distance" from KGH. The bylaw was interpreted at that time as requiring a residence 10 to 15 miles from the hospital, but is now interpreted as requiring a residence within 12 miles of KGH. Quinn's Reply Brief at 4. Quinn's application was denied despite the fact that Dickinson had a clinic close to KGH. This meant that Quinn could not admit patients

---

1. The defendants will be referred to collectively as "KGH".

from his Dover clinic to KGH and had to send them to a distant hospital.

Quinn then filed this suit alleging that the defendants' behavior violated the civil rights and antitrust laws. This Court granted summary judgment for the defendants on the civil rights claims and on the antitrust conspiracy claims involving the hospital. *Quinn v. Kent General Hospital, Inc.*, 617 F.Supp. 1226 (D.Del.1985). The Court also held that Quinn had alleged sufficient jurisdictional facts at that stage of the proceeding, when little discovery had been done, to grant Sherman Act jurisdiction. *Id.* at 1236. Now that further discovery has been completed, Quinn seeks a ruling that he has met the Sherman Act's jurisdictional requirements.

## II. INTERSTATE COMMERCE

The Sherman Act regulates "trade or commerce among the several States." Sherman Act, 15 U.S.C. §§ 1, 2. This requirement can be met if "the defendants' activity is itself in interstate commerce or, if it is local in nature, ... it has an effect on some other appreciable activity demonstrably in interstate commerce." *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980); *Weiss v. York Hospital*, 745 F.2d 786, 824 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *Cardio-Medical Assocs., Ltd. v. Crozer-Chester Medical Center*, 721 F.2d 68, 71 (3d Cir.1983). Quinn alleges that KGH's bylaw, while local in nature, affects interstate commerce sufficiently to bring his claim within the Sherman Act.

To meet the Sherman Act's jurisdictional requirements, KGH's conduct must be "shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *McLain*, 444 U.S. at 246, 100 S.Ct. at 511 (citation omitted). Although the Court may "examine the defendant's conduct both as it affects interstate commerce through the person of the plaintiff and as it affects commerce independently," *Cardio-Medical Assocs.*, 721 F.2d at 75, only KGH's chal-

lenged conduct is relevant, not its conduct in general. *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 723 (10th Cir.1981) (en banc); P. Areeda & H. Hovenkamp, *Antitrust Law* 156 (Supp.1986) [hereinafter Areeda] ("Jurisdiction is, of course, established by showing that the challenged conduct is sufficiently linked to an interstate effect.").

Although Quinn must demonstrate a "nexus" between KGH's challenged conduct, the bylaw, and interstate commerce, he need not make a "particularized showing" of the effect. *McLain*, 444 U.S. at 242, 100 S.Ct. at 509; *Crane*, 637 F.2d at 723 (requiring only a "logical connection as a matter of practical economics between the unlawful conduct and interstate commerce"); Areeda, *supra*, at 157 (the challenged conduct must "inherently tend, as a matter of practical economics, to have an interstate effect"). Nor need Quinn demonstrate that the effect of the bylaw is to reduce commerce or even cause a net change in the flow of commerce. *Cardio-Medical Assocs.*, 721 F.2d at 72–73. Quinn must instead demonstrate

> the presence in interstate commerce of transactions that, as a result of the anticompetitive conduct, are "substantially" different from the transactions that would otherwise have occurred. There may be differences in the overall number or volume of such transactions, but they may also be *differences in the terms of the transactions, or the parties thereto.* Such transactions "burden" interstate commerce because they are the result, directly or indirectly, of conduct that violates federal antitrust policy. They are a burden not on the volume of trade, but on the freedom of trade.

*Cardio-Medical Assocs.*, 721 F.2d at 74 (footnote omitted) (emphasis added). Quinn has met this burden.

## III. THE NEXUS

The basic interstate commerce effect claimed by Quinn is that he could not admit out-of-state patients, or even local patients, to KGH. This, in turn, altered his use of pharmaceuticals and supplies manu-

factured outside of Delaware, as well as his revenue from out-of-state patients and insurers. This effect cannot be precisely quantified. Unlike situations where a doctor loses privileges and can quantify how much business he lost because of a hospital's conduct, Quinn cannot effectively gauge this effect because he cannot know exactly how his practice would fare if he had full privileges at KGH. Instead, he attempted to show that both KGH's and Dickinson's conduct is in interstate commerce, and that the denial of privileges necessarily affects interstate commerce.[2]

■ Quinn submitted significant evidence to support his claim that KGH's general conduct is in interstate commerce. KGH admitted that the geographical area it serves includes parts of Maryland, and that transient patients from other states are sometimes treated at KGH. Quinn's Brief in Support at 3. KGH also admitted that 50% of the drugs and equipment used there are manufactured outside of Delaware. *Id.* Furthermore, more than half of KGH's patients are insured by out-of-state carriers. Quinn's Brief in Support, Ex. E.

KGH does not dispute any of these facts. Furthermore, although KGH challenges the relevance of these facts to this motion, other courts have held that these are precisely the factors to be examined in de-

termining whether a hospital's conduct is in interstate commerce. *Cardio-Medical Assocs.*, 721 F.2d at 76 ("Interferences with the interstate travel of patients, the interstate payment of fees and the interstate purchase of medication are well-recognized methods for demonstrating an effect on interstate commerce in antitrust litigation."); *see also Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (hospital's conduct in interstate commerce because of the interstate movement of medicine, supplies, insurance money, patients, and financing, and because hospital's parent company located in another state); *Weiss*, 745 F.2d at 824 (interstate commerce found because of interstate movement of drugs, equipment, patients, and insurance money).

In order to demonstrate the nexus between the challenged conduct and interstate commerce, Quinn proffers statistics about Dickinson's practice.[3] Quinn claims that 5.2% of Dickinson's patients, representing $200,000 of gross revenue, are from outside of Delaware and are precluded from being treated by Quinn at KGH because of the bylaw. Affidavit of Joseph R. Stokes, Quinn's Brief in Support, Ex. B. Also, in 1986 alone, Dickinson bought $18,-791.14 of pharmaceuticals and $33,876.91 in equipment manufactured outside of Delaware.[4] *Id.* Finally, 45% of payments to Dickinson are by out-of-state payors. *Id.* None of these figures are disputed by

---

2. Although Quinn is the plaintiff, he submitted and relies on data from Dickinson's practice. He supports the use of this data by saying that, as President, he "has a personal financial stake in the practice of each of the members of the Group. Hence, the interstate commerce inquiry is properly addressed by an examination of the entire Dickinson group." Quinn's Brief in Support at 8. Furthermore, the bylaw affected other members of Dickinson who were also denied full access to the hospital. *Id.* Although Quinn's practice may have less of an effect on interstate commerce than Dickinson's in terms of amount of revenue or number of patients affected, the two practices are parallel in that actions taken by KGH that have a "not insubstantial" effect on Dickinson's practice also have a "not insubstantial" effect on Quinn's, and vice versa. Therefore, the Court considered the figures submitted about Dickinson.

3. The Third Circuit authorized the Court to decide the interstate commerce issue by examining how KGH's conduct affects interstate com-

merce independently of Quinn. *Cardio-Medical Assocs.*, 721 F.2d at 75. The Court cannot do so in this case because Quinn has not demonstrated the interstate commerce effect of the bylaws independent of himself in practical economic terms. He has not submitted data concerning other physicians affected by the bylaw. Thus, the Court must examine how KGH's conduct affected interstate commerce through Quinn, that is, the nexus requirement.

4. Quinn claims that the bylaw "foreclos[ed] the use of these interstate drugs and equipment at the hospital." Quinn's Brief in Support at 9. KGH correctly points out that these material could not be used in KGH even without the bylaw because KGH provides its own supplies. KGH's Brief in Opposition at 9. The data is still relevant, however, because use of out-of-state supplies on Dickinson's patients by Dickinson rather than by KGH at KGH represents an alteration of interstate commerce caused by the bylaw.

KGH. Instead, KGH offers comments about Dr. Quinn's "medical empire" and how "minimal" Dickinson's revenue is.

This case is before the Court on a summary judgment motion. Therefore, the Court must look for factual disputes and determine whether it can rule as a matter of law that the challenged conduct is in interstate commerce. Fed.R.Civ.P. 56(c). KGH has not raised any genuine issues of material fact. Thus, the Court must consider the facts as presented by Quinn.

## IV. CONCLUSION

The Court holds that Quinn has made a sufficient showing that the bylaw has a "not insubstantial effect" on interstate commerce, and accordingly, grants Quinn's motion. The presence of the bylaw means that Quinn cannot admit patients to KGH. This means in practical economic terms that out-of-state patients, money, and supplies that would have gone to KGH cannot do so because the patients must be treated elsewhere. Quinn need not prove an absolute dollar amount for the effect on interstate commerce, nor need he show that commerce was reduced. He need show only that KGH's conduct logically affects interstate commerce, which he has done.

An Order will issue in conformity with this Opinion.