The ANESTHESIA ADVANTAGE, INC., a Colorado corporation; Konstantine Kalandros, CRNA; Scott McGlothen, CRNA; G. Edward Oswald, CRNA; and Raymond Golden, CRNA, Plaintiffs,

v.

The METZ GROUP, an unincorporated association; David Heisterkamp, M.D.; Joseph Verbrugge, M.D.; Steven Caputo, M.D.; Ronald Stevens, M.D.; Javier Fischer, M.D.; Eric Steiner, M.D.; Anesthesia Associates, P.C., a Colorado professional corporation; Peter Press, M.D.; and Humana Hospital of Aurora, a Colorado corporation, Defendants.

Civ. A. No. 86–B–1235.

United States District Court, D. Colorado.

Feb. 24, 1989.

Daniel S. Koch, Susan M. Jenkins, Quinn, Racusin, Jenkins & Ruttenberg, Washington, D.C., J. Nicholas McKeever, Jr., Netzorg and McKeever, Denver, Colo., for plaintiffs.

Richard Bayer, Kutak, Rock & Campbell, James E. Hartley, Gregory R. Piche, Holland & Hart, Denver, Colo., Miles Cortez, Cortez & Friedman, Englewood, Colo., Robert R. Montgomery, Montgomery, Little, Young, Campbell & McGrew, P.C., Englewood, Colo., Fred M. Winner, James Hinga, Raymond Miller, Denver, Colo., Susan J. Trout, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This matter is before the Court for consideration of Plaintiffs' Supplemental Documentation filed in response to Judge Kane's memorandum opinion and order dated July 24, 1987 (Appendix A) and order of clarification dated August 11, 1987 (Appendix B). Based on lack of subject matter jurisdiction, Judge Kane granted Defendants' motion for summary judgment and denied Plaintiffs' cross-motion for partial summary judgment. However, he provided for reconsideration of his ruling subject to Plaintiffs' filing of supplemental documentation in support of its cross-motion.

This anti-trust case concerns allegations by Plaintiff nurse-anesthetists and their anesthetist professional organization that Defendant physician anesthesiologists and their professional organizations illegally prevented Plaintiffs from competing for anesthesia services at three Colorado hospitals. These are obstetrical anesthesia services at Humana of Aurora (Humana), obstetrical and out-patient surgery anesthesia services at St. Luke's in Denver, and obstetrical anesthesia services at St. Mary—Corwin in Pueblo (St. Mary's).

The prior proceedings in this case include the filing of several motions for dismissal or, alternately, summary judgment, including Defendants' motion for summary judgment based on lack of subject matter jurisdiction under the Sherman Act. Plaintiffs cross-moved for partial summary judgment only on the jurisdictional issue of satisfaction of the interstate commerce requirement of the Sherman Act claims.

The parties have waived oral argument and submit the issue on the briefs, affidavits, supplemental documentation, and other records.

Plaintiffs timely filed supplementary documentation which I have considered and upon which this opinion and order is based. For the reasons expressed below, Defendants motion for summary judgment on the

jurisdictional issue is granted and Plaintiffs' cross-motion is denied.

Summary judgment motions are governed by Fed.R.Civ.P. 56. "The plain language of Rule 56 mandates the entry of summary judgment after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To "satisfy interstate commerce jurisdiction under the Sherman Act the challenged activity must occur *in* the flow of interstate commerce, or though occurring on a purely local level, substantially *affect* interstate commerce." *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 720 (10th Cir.1980) (emphasis in original), citing, *inter alia, McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). *Accord, Mishler v. St. Anthony's Hospital Systems*, 694 F.2d 1225 (10th Cir.1981).

All parties agree that this case involves the "effect on commerce" test. This test, while not requiring "an elaborate analysis of interstate impact" does require a showing of "a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce." *McLain, supra; Crane, supra.* And, while "the determination of whether an activity has a 'substantial effect' on interstate commerce cannot be determined with mathematical nicety, *Lease Lights, Inc. v. Public Service Company of Oklahoma*, 701 F.2d 794 (10 Cir.1983), the effect of the challenged activities must be more than "incidental, inconsequential, or *de minimis.*" *McLain, supra* 444 U.S. at 246, 100 S.Ct. at 511.

▮ In the 10th Circuit, the showing required under *McLain* must focus on the challenged activity rather than a defendant's general or overall business. *Crane, supra* at 722–24. Assertions concerning a defendant's overall business are not sufficient because "while the [overall activities] may impact interstate commerce greatly,

the challenged activit[ies] may in every practical economic sense be unrelated to interstate commerce." *Crane, supra* at 724. Such allegations concerning general business activities would leave the Court in the position of presuming the requisite nexus between the challenged activities and interstate commerce. Making such a presumption is impermissible. *McLain, supra* 444 U.S. at 242, 100 S.Ct. at 509.

Discovery was on-going in this case from 1986 including the opportunity to submit additional documentation provided by Judge Kane in his July 24, 1987 order. Therefore, there has been "adequate time for discovery" provided. *See Celotex, supra.*

In the initial pleadings filed in connection with the motion and cross-motion for summary judgment, contrary to *Crane,* Plaintiffs focused solely on the general business aspects of Defendants' activities. In doing so, Plaintiffs identified four channels of interstate commerce effected by Defendants' challenged behavior:

1. Many shareholders of Humana, Inc., Humana's parent corporation, reside outside of Colorado;

2. Revenues derived from payments made by out-of-state insurance companies and federal sources;

3. Purchase of drugs, equipment, medical, and hospital supplies from out-of-state manufacturers and vendors; and

4. Provision of services to patients who reside outside Colorado.

Applying the standards of *McLain* and *Crane* to the data initially submitted, Judge Kane provisionally granted Defendants' motion for summary judgment on the jurisdictional issue stating "plaintiffs' brief ... dwells on factors which focus only on the general business aspects of the hospital.... Because none of these factors focuses on the nexus between interstate commerce and the hospital's allegedly illegal activity against plaintiffs, they cannot support a finding of satisfaction of the interstate commerce requirement."

■ Now before the Court is supplemental documentation submitted by Plaintiffs' to demonstrate the required nexus between interstate commerce and Defendants' challenged activities. (See Appendix C submitted as summary of supplemental documentation). After reviewing Plaintiffs' supplemental data in the context of whether it establishes the required nexus between these challenged activities and interstate commerce, I find and conclude that Plaintiffs have again failed to fulfill their burden under *Celotex* to withstand Defendants' motion for summary judgment.

In their initial brief, Plaintiff identified as a channel of interstate commerce significantly effected by Defendants challenged behavior, the many shareholders of Humana, Inc.'s parent corporation who reside outside Colorado. Yet, both in the initial information provided on behalf of the motions for summary judgment and in their supplemental documentation, Plaintiffs provided no information about the nexus between the out-of-state shareholders and Defendants' challenged activities. Therefore, I am unable to evaluate whether this channel satisfies the *McLain* and *Crane* tests to establish proper subject matter jurisdiction. *supra.*

Next, Plaintiffs contend that the requisite nexus exists as to Defendant Humana Hospital because that entity receives substantial payments from out-of-state sources. In viewing the supplemental documentation, I assume these payments (titled in Appendix C as "$ Billed for those Patients", "Total OB Revenues", and "Total Surgery Revenues") include both monies received from out-of-state insurance companies and federal sources, and monies paid by defendants to out-of-state manufacturers and vendors for drugs, equipment, and supplies. Yet, although the amount of out-of-state payments expressed in Appendix C appears impressive, I cannot determine the portion of this amount that is attributable to the provision of obstetrical anesthesia or out-patient surgery anesthesia.

Thus, without more, I am unable to evaluate whether the effect of Defendants' challenged activities on interstate commerce is more than incidental or *de minimis*. *McLain, supra.*

The same rationale holds for Plaintiffs' discussion of out-of-state patients. Plaintiffs have provided no information from which I can determine the number of these out-of-state patients who received anesthesia as out-patient surgery patients. Thus, again I am again unable to discern the substantiality of the effect of Defendants' challenged activities on the particular interstate commerce channel.

In sum, the record, including the supplemental documentation, is insufficient to "establish that success of Defendants' alleged conspiracy would spell, in practical economic terms, appreciable and unreasonable burdens on the free and uninterrupted flow of commerce." *Crane, supra.* Plaintiffs have failed to make a showing sufficient to establish the existence of subject matter jurisdiction which is an essential element in the case. Therefore, under *Celotex*, summary judgment is proper on Plaintiffs' Sherman Act claims. Fed.R.Civ.P. 56.

All federal claims having been dismissed from this case, there is no longer any basis for pendent jurisdiction over Plaintiffs' remaining state claims. *Curtis Ambulance v. Board of County Comm'rs*, 811 F.2d 1371 (10th Cir.1987).

ACCORDINGLY, IT IS ORDERED:

1. Defendants' motion for summary judgment as to subject matter jurisdiction under the Sherman Act is GRANTED; and plaintiffs' cross-motion for partial summary judgment is DENIED.

2. Plaintiffs' first, fourth, and sixth claims for relief are DISMISSED.

3. Plaintiffs' second, third, fifth, and seventh claims based on pendent jurisdiction are DISMISSED WITHOUT PREJUDICE.

## APPENDIX A

### MEMORANDUM OPINION AND ORDER

July 28, 1987

This anti-trust case raises serious issues about the financial and institutional

management of health care. Plaintiffs are nurse anesthetists and an anesthetist professional organization. Defendants are physician anesthesiologists and their professional organizations. According to the amended complaint, both of these health-care professional groups administer anesthesia. Amended Complaint, ¶ 32. "In the market for anesthesia services, nurse anesthetists and anesthesiologists compete with each other." *Id.*

The crux of the nurses' complaint is that they have been, and are being, illegally squeezed out of business by anesthesiologists because their presence forces down the market price for anesthetization services. According to defendants, the key question is whether the anesthetists should be required to submit to the supervision of anesthesiologists. *See* Defendants' Joint Memorandum in Support of Motion for Summary Judgment Dismissing Count One of the Amended Complaint, at 1.

The complaint focuses on defendants' actions at three Colorado hospitals: Humana of Aurora, St. Luke's in Denver, and St. Mary's–Corwin in Pueblo. For example, plaintiffs allege various defendants threatened obstetricians with non-provision of anesthesiological services for in-patient surgery if those obstetricians continue to utilize nurse anesthetists for out-patients. Amended Complaint, ¶ 63. This accusation is fairly typical of the alleged behavior of the physician defendants.

The amended complaint states seven claims for relief: (1) conspiracy in restraint of trade, market allocation, and price-fixing at Humana Aurora in violation of section 1 of the Sherman Act, 15 U.S.C. § 1; (2) breach of contract by Humana Aurora; (3) tortious interference with business and professional relationships at Humana Aurora; (4) conspiracy in restraint of trade at St. Luke's; (5) tortious interference at St. Luke's; (6) conspiracy in restraint of trade at St. Mary's; and (7) tortious interference at St. Mary's.

Between March 6, 1987 and May 15, 1987, defendants filed five motions for dismissal or summary judgment. These motions are: (1) defendant Verbrugge's mo-tion to dismiss or for summary judgment, (2) defendants' joint motion to dismiss or for summary judgment on counts six and seven, (3) defendants' joint motion for summary judgment on count one, (4) the motion of defendants The Metz Group, Heisterkamp, Caputo, Stevens, Fischer and Steiner for summary judgment on counts one and four, and (5) defendants' motion for summary judgment as to subject matter jurisdiction under the Sherman Act.

Plaintiffs have cross-moved for partial summary judgment only on the jurisdictional issue of satisfaction of the interstate commerce requirement of the § 1 Sherman Act claims. For the reasons expressed below, plaintiffs' cross-motion on the jurisdictional issue is denied and defendants' opposing motion is granted. I therefore do not address defendants' other motions.

*Interstate Commerce under the Sherman Act*

"It is now hornbook law that to satisfy interstate commerce jurisdiction under the Sherman Act the challenged activity must occur *in* the flow of interstate commerce, or, though occurring on a purely local level, substantially *affect* interstate commerce." *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 720 (10th Cir.1980) (emphasis in original), citing, *inter alia, McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 242 [100 S.Ct. 502, 509, 62 L.Ed.2d 441] (1980). *Accord, Mishler v. St. Anthony's Hospital Systems*, 694 F.2d 1225, 1227 (10th Cir.1981).

The instant case, like *Crane*, at 720, and *Mishler*, at 1227, involves only the "effect on commerce" test. Plaintiff's Brief in Support of Motion for Partial Summary Judgment, at 3; Defendants' Joint Opposition Brief, at 1. Those two Tenth Circuit precedents are controlling. Since *Mishler* simply followed the legal analysis expostulated by *Crane*, I look primarily to *Crane* for instruction. Interpreting *McLain*, the Tenth Circuit there held that "an elaborate analysis of interstate impact is not necessary at this jurisdictional stage, only an allegation showing a logical connection as a matter of practical economics between the

▪▪▪▪▪▪▪▪▪▪▪▪▪

unlawful conduct and interstate commerce." *Id.* at 723.

In *Crane,* the district court had dismissed the complaint for lack of Sherman Act jurisdiction without affording the plaintiff an opportunity for discovery. *Id.* at 720. The circuit opined "Dr. Crane should have the opportunity to adduce evidence and to prove, if he can, that success of defendants' alleged conspiracy would spell, in practical economic terms, appreciable and 'unreasonable burdens on the free and uninterrupted flow' of commerce in the three interstate channels specified" in the complaint. *Id.* at 725 (citations omitted).

The situation was virtually identical in *Mishler.* There, I had granted a Fed.R. Civ.P. 12(b) motion to dismiss the complaint. Dr. Mishler had pleaded the same three interstate channels as had Dr. Crane. *Mishler* at 1227. In reversing my dismissal, the Tenth Circuit noted the complaint "merely must identify the relevant channels of interstate commerce and their relationship to the challenged activities." *Id.* at 1227–28. "Simply by looking at the pleadings, we cannot say with certainty that Dr. Mishler will be unable to show the effect he alleges the challenged activities have on interstate commerce." *Id.* at 1228.

The procedural impetus behind *Crane* and *Mishler* is missing here. This case has progressed beyond the boundaries of *Crane* and *Mishler.*[1] This action was initiated in June, 1986. Discovery has been proceeding since that time. Further, I have already convened two pretrial conferences dealing, in significant part, with discovery issues.

Additionally, the jurisdictional issue has been voluntarily posed, by *both* parties, in motions for summary judgment. Such motions are, of course, governed by Rule 56 rather than Rule 12. The difference is important since "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett* [477 U.S. 317, 322, 106 S.Ct. 2548, 2552], 91 L.Ed.2d 265, 273 (1986). *See also* Fed.R.Civ.P. 56(e) (adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). Thus, the concern evinced in *Crane* and *Mishler* that plaintiffs be accorded an adequate opportunity for pleading and proof has been met.

Further support for the significance posed by the differing procedural stages of *Crane* and *Mishler,* on the one hand, and this case, on the other, is found in *McLain* itself:

> To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and *if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings* either *that the defendants' activity* is itself in interstate commerce or, if it is local in nature, that it *has an effect on some other appreciable activity demonstrably in interstate commerce.*
>
> *McLain* [444 U.S.], at 242 [100 S.Ct. at 509] (emphasis added).

In both *Crane* and *Mishler,* the Tenth Circuit held the plaintiff had alleged the critical relationship in the pleadings. Consequently, dismissal was premature. *Crane,* at 724; *see Mishler,* at 1228. Nei-

---

**1.** The district court did decide the jurisdictional issue on a motion for directed verdict in *Lease Lights, Inc. v. Public Service Company of Oklahoma,* 701 F.2d 794, 796 (10th Cir.1983). That case, however, is factually inapposite. Moreover, the procedural stage at which the jurisdictional issue was decided did not have any overt impact on the circuit court's decision, as it had in *Crane* and *Mishler.* In any event, I do not intend to imply that the procedural stage at which the jurisdictional issue is decided will modify the substantive law applied. The procedural stage at which a substantive decision is rendered can, however, necessarily limit the scope or extent of that substantive decision. I describe the procedural histories of *Crane* and *Mishler* only to demonstrate that the Tenth Circuit has not yet faced the precise issue raised by this case.

ther court, however, needed to reach the question whether "an effect on some other appreciable activity demonstrably in interstate commerce" was actually discernible once those initial allegations had been controverted. Such, however, is the precise issue faced here.

Initially, I note plaintiffs' argumentation in support of their motion for partial summary judgment regarding defendant Humana Hospital dotes on an incorrect legal standard. In *Crane*, the Tenth Circuit specifically found the challenged activity, and *not* the defendants' general or overall business, is needed to satisfy the *McLain* standard. *Crane*, at 722–24.[2] Nevertheless, that portion of plaintiffs' brief which dwells on defendant Humana Hospital relies on factors which focus only on the general business aspects of the hospital. These factors are as follows: (1) many shareholders of Humana Inc., Humana Hospital's parent corporation, reside outside Colorado, (2) Humana Aurora derives substantial revenues from payments made by out-of-state insurance companies and federal sources, (3) Humana Aurora purchases drugs, equipment, medical and hospital supplies which are manufactured in states other than Colorado, and (4) 2.78% of all of Humana Hospital's inpatients between September 1, 1985 and July 31, 1986 resided outside Colorado, and those inpatients accounted for 12.8% of total inpatient billing during that period.[3] Because none of these factors focuses on the nexus between interstate commerce and the hospital's allegedly illegal activity against plaintiffs, they cannot support a finding of satisfaction of the interstate commerce requirement.

Plaintiffs have requested an opportunity to submit "proof that specific services within Humana Aurora requiring the use of anesthesia—such as obstetrics or surgery—involve interstate commerce." Plaintiffs' Reply Brief at 3. This proof purportedly consists of data from a magnetic tape. I provided such an opportunity. Minute Order of July 7, 1987. In response to that minute order, plaintiffs stated:

> [P]laintiffs will be unable to submit additional data from that source [the tape], for reasons beyond their control, until Friday, July 24, at the earliest. Plaintiffs intend to transcribe it and seek leave to submit it to the court as soon as possible. In addition, plaintiffs anticipate receiving further information regarding St. Luke's and St. Mary's hospitals, but are unable to predict when additional data may be available regarding those entities.

> Given these facts, plaintiffs respectfully request the court to grant their motion on the existing record with such additional data as may become available before the court rules. If the motion is denied plaintiffs request the court to specify in what manner the record is deficient so that plaintiffs may take appropriate action if any supplementary data becomes available after the court's ruling.

> Plaintiffs' Response to July 7, Minute Order.

As just explained, plaintiffs' motion cannot be granted with respect to defendant Humana Hospital on the basis of the existing record. I therefore accept plaintiffs' invitation to deny the motion now, with an allowance for the future submission of supplementary data to demonstrate a satisfactory nexus between interstate commerce and Humana Hospital's challenged activity.

Plaintiffs next contend the requisite nexus exists as to defendant Anesthesia Associates because that entity receives payments from out-of-state sources. Indeed,

---

**2.** This issue is in conflict among the circuits. For example, compare *Crane* with *Shahawy v. Harrision*, 778 F.2d 636, 640 (11th Cir.1985). Chief Judge Holloway's separate opinions in *Crane* and *Mishler* also address this important point.

**3.** Plaintiffs additionally claim a finding of existence of the interstate commerce nexus is strengthened because "issues concerning [plain-

tiffs' anesthetical] practice triggered consultation between the local administrators [of Humana Hospital] and out-of-state management." Plaintiffs' Support Brief at 8. This factor is not persuasive. *See Doe v. St. Joseph's Hospital*, 788 F.2d 411, 417 (7th Cir.1986) (sharing of information and medical training across state lines does not provide a basis for the required nexus).

plaintiffs aver 68% of AA's payments in 1985 and 1986 originated from such sources. Plaintiffs further assert AA had "some three dozen" out-of-state patients in 1985. Plaintiffs' Support Brief, at 7. In response, defendants observe "only 37 of the 1842 patients treated by Anesthesia Associates, P.C. from July 1, 1985 through December 3, 1985 listed out-of-state addresses and of those 37, only *one* involved obstetrical anesthesia." Response Brief at 11.

Again, plaintiffs fudge the distinction between AA's general business activity and the challenged activity. Yet even assuming, *arguendo*, that the focus here is on AA's challenged activity, plaintiffs must still demonstrate a "not insubstantial effect on the interstate commerce involved." *Crane* at 723, quoting *McLain* [444 U.S.] at 246 [100 S.Ct. at 511]. Plaintiffs have failed to fulfill their burden on this point. First, plaintiffs' briefs are devoid of any definition of the relevant interstate market allegedly affected by defendants' challenged activity. I cannot assess the substantiality of the effect of that activity on the particular interstate commerce involved, *i.e.* the relevant market, without adequate knowledge of that market. In the absence of a context in which to frame the activity, consideration of the activity in a vacuum would be improper. Thus, I cannot make a determination of whether any effect here is *de minimis.*

The same rationale holds for plaintiffs' discussion of the individual defendants, defendant The Metz Group, and the plaintiffs themselves. For instance, plaintiffs' affidavits aver between 20% and 40% of plaintiffs' total yearly quota of patients reside out-of-state. The affidavits, however, fail to convey any sense of what percentage of the relevant market, whatever that market may be, is represented by that quota. Plaintiffs have not satisfied the previously delineated standards of proof operative at this stage of the litigation, even though plaintiffs themselves have cross-moved for summary judgment. In sum, the record is insufficient to establish that success of defendants' alleged conspiracy would spell, in practical economic terms, appreciable and unreasonable burdens on the free and uninterrupted flow of commerce. *Crane* at 725.

Accordingly, IT IS ORDERED:

1. Defendants' motion for summary judgment as to subject matter jurisdiction under the Sherman Act is GRANTED; and plaintiffs' cross-motion for partial summary judgment is DENIED.

2. Plaintiffs may file supplementary documentation alleging Sherman Act jurisdiction in accordance with the contents of this memorandum opinion and order, if they can do so within the requirements of Fed.R.Civ.P. 11, on or before 60 days from the date of this order. If no adequate documentation is timely filed, then plaintiffs' first, fourth, and sixth claims for relief will be deemed dismissed, and plaintiff's second, third, fifth, and seventh claims, all of which are pendent, will be deemed dismissed without prejudice.

3. The following motions are stricken, without prejudice, as moot: (a) defendant Verbrugge's motion to dismiss or for summary judgment, (b) defendants' joint motion to dismiss or for summary judgment on counts six and seven, (c) defendants' joint motion for summary judgment on count one, and (d) the motion of defendants The Metz Group, Heisterkamp, Caputo, Stevens, Fischer and Steiner for summary judgment on counts one and four. These motions may be revived if and when plaintiffs submit supplementary documentation in accordance with the content of this memorandum opinion and order.

DATED at Denver, Colorado this 24th day of July, 1987.

/s/ John L. Kane, Jr.
United States District Judge

APPENDIX B

ORDER

August 11, 1987

Plaintiffs have moved for clarification and reconsideration of the memorandum opinion and order dated July 24, 1987. The motion for reconsideration is denied. The motion for clarification is granted to the following specified extent:

1. The July 24, 1987 order does not constitute a final order for purposes of appeal until either (a) the court rules on the supplemental submission plaintiffs intend to make prior to the conclusion of the 60 day period or, (b) if no such submission is made, at the end of the 60 day period.

2. Plaintiffs failed in their offer of proof in that the evidence submitted by them did not establish the required nexus between the defendants' challenged activities and interstate commerce. In differentiating between challenged activities and defendants' general business, as a jurisprudential matter, I suggest plaintiffs review Judge Holloway's separate opinions in *Crane* and *Mishler*.

3. My reference to definition of a relevant market was intended only to indicate to plaintiffs that their quantum of proof must fit within the context of defendant's challenged activities. By using the term market, I meant plaintiffs should tailor their submitted evidence to focus on the realm of challenged activities rather than on the more abstract world of defendants' general business activities.

DATED at Denver, Colorado this 11th day of August, 1987.

/s/ John L. Kane, Jr.
United States District Judge

APPENDIX C

TABLE 1(A)

THIRD QUARTER 1986:
OUT–OF–STATE PATIENTS (OBSTETRIC)

| | # of Patients | % of total Patients | $ Billed for those Patients | % of total $ Billed |
|---|---|---|---|---|
| Humana | | | | |
| Aurora | 0 | 0 | 0 | 0 |
| St. Luke's | 14 | 2.9 | $ 76,497 | 6.6% |
| St. Mary's | 9 | 2.7 | 20,430 | 3.2 |

TABLE 1(B)

THIRD QUARTER 1986:
OUT–OF–STATE PATIENTS (SURGERY)

| | # of Patients | % of total Patients | $ Billed for those Patients | % of total $ billed |
|---|---|---|---|---|
| Humana | | | | |
| Aurora | 43 | 2.6 | $ 311,215 | 5.1% |
| St. Luke's | 127 | 7.4 | 1,522,006 | 12.8 |
| St. Mary's | 93 | 6.0 | 747,620 | 8.1 |

TABLE 2

THIRD QUARTER 1986:
OUT OF STATE PAYMENTS

| | Obstetrics | | | Surgery | |
| | Total OB Revenues | Medicaid % | Comm'l % | Total Surgery Revenues | % Medicare Medicaid | % Comm'l Insurers |
|---|---|---|---|---|---|---|
| Humana Aurora | $1,753,390 | 3.6 | 78.5 | $4,112,672 | 20.7% | 57.7% |
| St. Luke's | 1,075,586 | 4.8 | 53.2 | 9,350,644 | 59.4 | 25.2 |
| St. Mary's | 612,640 | 22.9 | 16.7 | 7,952,063 | 62.1 | 9.9 |