912 F.2d 397
 1990-2 Trade Cases 69,144
 The ANESTHESIA ADVANTAGE, INC., a Colorado Corporation;
Scott McGlothlen, CRNA; G. Edward Oswald, CRNA;
Raymond Golden, CRNA; Konstantine
Kalandros, CRNA; Plaintiffs-Appellants,
v.
The METZ GROUP, an Unincorporated Association; David
Heisterkamp, M.D.; Joseph Verbrugge, M.D.; Steven Caputo,
M.D.; Ronald Stevens, M.D.; Javier Fischer, M.D.; Eric
Steiner, M.D.; Anesthesia Associates, P.C., A Colorado
Professional; Peter Press, M.D.; Humana Hospital of
Aurora, A Colorado Corporation; Defendants-Appellees.
 No. 89-1073.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 15, 1990.
 
 Bobbee J. Musgrave (B. Lawrence Theis, with her on the briefs), Walters & Theis, Denver, Colo., for plaintiffs-appellants.
 James E. Hartley, Holland & Hart, Denver, Colo. (Elizabeth A. Phelan and William E. Mooz, Jr., Holland & Hart, Denver, Colo., for Humana Hosp. of Aurora; Robert R. Montgomery, Jonathan D. Gordon, and Catherine M. Meyer, Montgomery Little Young Campbell & McGrew, P.C., Englewood, Colo., for Anesthesia Associates, P.C. and Peter Press, M.D.; Raymond J. Miller and Timothy LaQuey, Denver, Colo., for Joseph Verbrugge, M.D.; Fred M. Winner, James D. Hinga and Todd L. Lundy, Baker & Hostetler, Denver, Colo., for The Metz Group, David Heisterkamp, M.D., Stephen Caputo, M.D., and Ronald Stevens, M.D., with him on the brief), for defendants-appellees.
 ANDERSON, BRORBY, Circuit Judges, and THEIS,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Plaintiffs appeal orders of the United States District Court for the District of Colorado granting defendants' motion for summary judgment for lack of subject matter jurisdiction and dismissing plaintiffs' antitrust and pendent state law claims. 708 F.Supp. 1171. We reverse and remand.
 
 
 2
 Plaintiffs are nurse anesthetists and an anesthetist professional organization, The Anesthesia Advantage, Inc. ("TAA").[1] Defendants are physician anesthesiologists and their professional organizations, The Metz Group, an unincorporated association, and Anesthesia Associates, P.C., a Colorado professional corporation, as well as Humana Hospital of Aurora, a Colorado corporation.[2] Plaintiffs alleged that certain decisions and proposals relating to the appropriate roles of and relationships between nurse anesthetists and physician anesthesiologists at three particular hospitals in Colorado--Humana Aurora, St. Luke's Hospital in Denver, and St. Mary's-Corwin in Pueblo--violated section one of the Sherman Act, 15 U.S.C. Sec. 1 and constituted a breach of contract and tortious interference with business and professional relationships, in violation of state law.
 
 
 3
 After discovery was completed, defendants filed five motions to dismiss or for summary judgment. Included in these was a motion for summary judgment for failure by plaintiffs to satisfy the jurisdictional interstate commerce requirement applicable to the antitrust claims. Plaintiffs cross-moved for partial summary judgment on the jurisdictional issue only.
 
 
 4
 The district court granted defendants' motion and denied plaintiffs' cross-motion, but permitted plaintiffs to "file supplementary documentation alleging Sherman Act jurisdiction" within 60 days. Memorandum Opinion and Order, July 24, 1987, at 9. Plaintiffs timely filed supplementary materials. The district court then considered those supplementary materials and again granted defendants' motion for summary judgment for lack of subject matter jurisdiction and denied plaintiffs' motion. It therefore dismissed with prejudice the antitrust claims and dismissed without prejudice the pendent state law claims.
 
 BACKGROUND
 
 5
 Both nurse anesthetists and physician anesthesiologists administer anesthesia. To a certain extent, therefore, they compete with one another in the provision of anesthesia services. Plaintiffs challenge certain decisions and proposals at three hospitals in Colorado. First, they argue that Humana Aurora's institution of a "call schedule" concerning the availability of anesthesiologists and a recommendation by Humana's department of anesthesiology that the hospital adopt guidelines concerning the supervision of nurse anesthetists violated section one of the Sherman Act. Second, plaintiffs argue that defendants conspired to induce St. Luke's Hospital to reject a "fee-for-service" proposal by plaintiffs to provide out-patient ambulatory surgery anesthesia on pre-arranged days, also in violation of section one.[3] Third, plaintiffs allege that defendants, particularly defendant Verbrugge, violated section one by inducing St. Mary's-Corwin Hospital to reject plaintiffs' proposal that the hospital use plaintiffs for an obstetric epidural anesthesia program. Plaintiffs claimed that these actions were part of defendants' attempt to eliminate nurse anesthetists from practice in the Denver area, with the result that the cost of anesthesia services remained higher and competition was reduced. Plaintiffs allege that these same actions constituted tortious interference with business and professional relationships, and, with regard to events at Humana Aurora, a breach of contract, all in violation of state law.[4]
 
 
 6
 The district court granted defendants' motion for summary judgment and dismissed plaintiffs' claims for lack of subject matter jurisdiction, concluding that plaintiffs had failed to demonstrate "a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce." Crane v. Intermountain Health Care, Inc., 637 F.2d 715, 723 (10th Cir.1980) (en banc). See also McLain v. Real Estate Bd., Inc., 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); United States v. Suntar Roofing, Inc., 897 F.2d 469 (10th Cir.1990); Lease Lights, Inc. v. Pub. Serv. Co., 701 F.2d 794 (10th Cir.1983); Mishler v. St. Anthony's Hosp. Sys., 694 F.2d 1225 (10th Cir.1981).
 
 DISCUSSION
 
 7
 "On appeal, we review the granting of a motion for summary judgment de novo, and apply the same standard as the district court. Summary judgment is appropriate only when there are no genuine issues of fact, and one party is entitled to judgment as a matter of law. Here, the evidence must be viewed in the light most favorable to the appellant, as the nonmoving party."
 
 
 8
 Schalk v. Gallemore, 906 F.2d 491 (10th Cir.1990) (citations omitted); see also Reazin v. Blue Cross and Blue Shield, 899 F.2d 951, 979 (10th Cir.1990), cert. denied, --- U.S. ----, 110 S.Ct. 3241, 111 L.Ed.2d 752; Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Moreover, summary judgment must be entered "after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). While both parties in this case moved for summary judgment on the jurisdiction issue, that fact "does not permit entry of summary judgment if disputes remain as to material facts." Houghton v. Foremost Fin. Servs. Corp., 724 F.2d 112, 114 (10th Cir.1983); see also Missouri Pac. R.R. v. Kansas Gas & Elec. Co., 862 F.2d 796, 799 (10th Cir.1988).
 
 
 9
 The sole issue presented on this appeal is whether the district court correctly held that plaintiffs had failed to satisfy the interstate commerce requirement for jurisdiction under the Sherman Act. "It is now hornbook law that to satisfy interstate commerce jurisdiction under the Sherman Act the challenged activity must occur in the flow of interstate commerce, or, though occurring on a purely local level, substantially affect interstate commerce." Crane, 637 F.2d at 720 (emphasis original). See McLain, 444 U.S. at 242, 100 S.Ct. at 509; Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); Lease Lights, Inc., 701 F.2d at 798; Mishler, 694 F.2d at 1227. This case concerns only the "effect on commerce" test.
 
 In McLain, the Supreme Court stated:
 
 10
 "To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings ... that the defendants' activity ..., if it is local in nature, ... has an effect on some other appreciable activity demonstrably in interstate commerce."
 
 
 11
 444 U.S. at 242, 100 S.Ct. at 509. Differing language in McLain concerning the precise parameters of this showing[5] has generated a split in the circuits as to whether a plaintiff must show a nexus between interstate commerce and defendant's general business activities or whether the requisite connection must be between interstate commerce and defendant's challenged (i.e. allegedly unlawful) activities. Compare Park v. El Paso Bd. of Realtors, 764 F.2d 1053, 1063 (5th Cir.1985), cert. denied, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986) and Cardio-Medical Assocs., Ltd. v. Crozer-Chester Medical Center, 721 F.2d 68, 75 (3d Cir.1983) and Construction Aggregate Transp., Inc. v. Florida Rock Indus., 710 F.2d 752, 766-67 (11th Cir.1983) and Western Waste Serv. Sys. v. Universal Waste Control, 616 F.2d 1094, 1097 (9th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980) (all holding that an antitrust plaintiff need only show a nexus between the defendant's general business activities and interstate commerce) with Sarin v. Samaritan Health Center, 813 F.2d 755, 758 (6th Cir.1987) and Seglin v. Esau, 769 F.2d 1274, 1280 (7th Cir.1985) and Hayden v. Bracy, 744 F.2d 1338, 1342 (8th Cir.1984) and Furlong v. Long Island College Hosp., 710 F.2d 922, 926 (2d Cir.1983) and Cordova & Simonpietri Ins. Agency v. Chase Manhattan Bank N.A., 649 F.2d 36, 45 (1st Cir.1981) (all holding that an antitrust plaintiff must show a nexus between defendant's challenged activity and interstate commerce); but see Mitchell v. Frank R. Howard Memorial Hosp., 853 F.2d 762, 763 n. 1 (9th Cir.1988) (the court "express[ed] no view ... as to the state of Ninth Circuit law on th[e] point [of whether the nexus must be between interstate commerce and the challenged activity or the general business activities of defendants], cert. denied, 489 U.S. 1013, 109 S.Ct. 1123, 103 L.Ed.2d 186 (1989). The Tenth Circuit is among those circuits which hold that the requisite nexus must be between the defendant's challenged activities and interstate commerce. Crane, 637 F.2d at 724. That determination by the en banc court in Crane is binding on this panel.
 
 
 12
 Thus, plaintiffs "must (1) identify a 'relevant' aspect of interstate commerce, and (2) specify its relationship to the defendant's activities alleged to be 'infected' with illegality." Id. at 723. Further, they must show that defendants' challenged activities have a "not insubstantial effect on the interstate commerce involved." McLain, 444 U.S. at 246, 100 S.Ct. at 511. However, "an elaborate analysis of interstate impact is not necessary at the jurisdictional stage, only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce." Crane, 637 F.2d at 723. As we acknowledged in Lease Lights, Inc., "[t]he determination of whether an activity has a 'substantial effect' on interstate commerce cannot be determined with mathematical nicety." 701 F.2d at 798. Moreover, a plaintiff need not establish that the flow of interstate commerce is actually diminished; it is sufficient to show that such commerce is affected in more than a de minimis way. See McLain, 444 U.S. at 243, 100 S.Ct. at 509-10; Mishler, 694 F.2d at 1228. Finally, we reiterate what this circuit and others have noted before: the test for the adequacy of the requisite nexus between interstate commerce and the defendant's challenged activities is a "pragmatic" one which turns on the particular facts of the particular case. Crane, 637 F.2d at 727; see also Mitchell, 853 F.2d at 765; Cardio-Medical Assocs., Ltd. v. Crozer-Chester Medical Center, 721 F.2d 68, 72 (3d Cir.1983); Tarleton v. Meharry Medical College, 717 F.2d 1523, 1529 (6th Cir.1983); Heille v. City of St. Paul, 671 F.2d 1134, 1136 (8th Cir.1982).
 
 
 13
 The district court held that, even with their supplementary submissions, plaintiffs failed to demonstrate the required nexus. It concluded that, while plaintiffs presented evidence that Humana's revenues received from out-of-state insurance companies and federal sources, as well as the amounts paid by defendants to out-of-state manufacturers and vendors for drugs, equipment and supplies, were "impressive," it was unable to "determine the portion of this amount that is attributable to the provision of obstetrical anesthesia or out-patient anesthesia." With regard to plaintiffs' assertion of a nexus by virtue of treatment of out-of-state patients, the district court held that "[p]laintiffs have provided no information from which I can determine the number of these out-of-state patients who received anesthesia as out-patient surgery patients." The district court accordingly granted defendants' motion for summary judgment on jurisdiction.
 
 
 14
 Plaintiffs have relied upon four channels of interstate commerce: (1) out-of-state shareholders of defendant Humana hospital; (2) the purchase of out-of-state equipment and supplies by defendant Humana and by St. Luke's hospital, and by certain of the individual defendants, as well as the use of such equipment by the individual defendants and by plaintiffs; (3) the receipt by defendants and plaintiffs, as well as by St. Luke's and St. Mary's hospitals, of substantial revenues from out-of-state insurance companies; and (4) the treatment by defendants and plaintiffs, as well as by St. Luke's and St. Mary's, of out-of-state patients. The channels of interstate commerce in insurance payments, patients, and supplies and equipment have been recognized in numerous cases as appropriate channels for antitrust jurisdictional purposes. See, e.g., Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 741, 744, 96 S.Ct. 1848, 1850-51, 1852, 48 L.Ed.2d 338 (1976); Miller v. Indiana Hosp., 843 F.2d 139, 144 n. 5 (3d Cir.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988); Marrese v. Interqual, Inc., 748 F.2d 373, 382 and n. 16 (7th Cir.1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985); Mishler, 694 F.2d at 1227-28; Crane, 637 F.2d at 725. Plaintiffs have therefore satisfied the first part of the jurisdictional test by identifying "a 'relevant' aspect of interstate commerce." Crane, 637 F.2d at 723.
 
 
 15
 Defendants argue, and the district court found, that plaintiffs have consistently failed to satisfy the second part of the jurisdictional test by failing to specify the relationship between the identified channels of interstate commerce and "defendant's activities alleged to be "infected' with illegality." Id. Specifically, they assert that plaintiffs have only presented evidence pertaining to defendants' general business activities. They also argue plaintiffs have thereby failed to show that defendants' challenged activities have a "not insubstantial" effect on interstate commerce. We disagree.
 
 
 16
 Plaintiffs submitted evidence that defendant Humana derives substantial revenues from out-of-state insurance companies, as well as from medicaid and medicare, for both obstetric patients and for surgery patients. They also submitted data demonstrating Humana's purchase of substantial amounts of anesthesia supplies and equipment from out-of-state companies.[6] Finally, plaintiffs demonstrated that Humana treated some, although not a large number, of out-of-state patients.[7]
 
 
 17
 Plaintiffs presented evidence that defendant Anesthesia Associates received 68% of its revenues during 1985 and 1986 from out-of-state insurance companies. From July through December, 1985, the group treated 37 out-of-state patients. With respect to the Metz Group defendants and individual defendants Heisterkamp, Caputo, Stevens and Verbrugge, plaintiffs submitted evidence that from 3.62% to 14.03% of their respective patients were from out-of-state between the months of July and December, 1985. During that same time period, those individual defendants billed from 78.8% to 95% of their total billings to out-of-state insurance companies or payors. Finally, plaintiffs presented evidence that the Metz Group owns anesthesia machines manufactured by an out-of-state company.
 
 
 18
 With respect to St. Luke's Hospital, which is not a defendant in this case but at which some of the individual defendants practiced and where some of the defendants allegedly committed their anti-competitive acts, plaintiffs submitted data showing the purchase of substantial amounts of anesthesia supplies and equipment from out-of-state companies, as well as the receipt of substantial portions of its revenues from out-of-state insurance companies. As at Humana, plaintiffs' evidence indicated that a small percentage of St. Luke's obstetric and surgery patients were from out-of-state. Plaintiffs admit that their evidence regarding non-defendant St. Mary's hospital is scantiest. They presented evidence that St. Mary's treated a small number of out-of-state obstetrical and surgical patients. They also presented evidence that St. Mary, like St. Luke's and Humana, received substantial revenues from medicaid and from out-of-state insurance companies for obstetric and surgery cases.
 
 
 19
 Plaintiffs provided affidavits in which they described their own practices. Plaintiff Konstantine Kalandros, for example, stated in his affidavit that "nearly all the supplies [he used] were provided by the hospital." Affidavit of Konstantine Kalandros, R. Vol. I, Tab 17. He further stated that "[m]y estimate is that about 20% of the general anesthesia patients I saw at Humana Hospital at Aurora were from out-of-state." Id. He stated "[f]rom 10-20% of the patients I see at St. Luke's are from out-of-state." Id.
 
 
 20
 Bearing in mind our standard of review on a motion for summary judgment, as well as our previous admonitions that plaintiffs at the jurisdictional stage need not make an "elaborate analysis," Crane, 637 F.2d at 724, or establish the required effect on interstate commerce with "mathematical nicety," Lease Lights, Inc., 701 F.2d at 798, we conclude that plaintiffs' showing was sufficient to defeat defendants' motion for summary judgment on interstate commerce grounds. We reject defendants' assertion that plaintiffs must make the more particularized showing of how individual patients of the individual defendant physician anesthesiologists received anesthesia services in which particular out-of-state anesthesia supplies or equipment were used or for which particular out-of-state insurance payments were made. We similarly reject the district court's conclusion that plaintiffs must apportion the amount of total obstetric or surgical revenues attributable to the provision of obstetrical anesthesia or out-patient surgery.[8] While defendants argue, and the district court held, that plaintiffs' claimed failure to specifically tie the channels of interstate commerce to the provision of obstetric and out-patient surgical anesthesia made it impossible to determine whether the effect on interstate commerce was "not insubstantial" or not, we conclude that plaintiffs' evidence was sufficient under Celotex to defeat defendants' motion for summary judgment.[9]
 
 
 21
 In reaching this conclusion, we note that a determination that sufficient evidence exists under Celotex to reverse the grant of one party's motion for summary judgment does not necessarily compel a conclusion that the other party's motion for summary judgment should be granted. However, the practical effect of our ruling in this particular case comes close to doing so, although the denial of plaintiffs' motion is not actually before us. Nevertheless, while it appears unlikely that additional evidence would significantly alter plaintiffs' showing on the jurisdictional elements, we do not wish to foreclose that possibility. Cf. McLain, 444 U.S. at 245, 100 S.Ct. at 510-11 ("[a]t trial, respondents will have the opportunity ... to make their own case contradicting this factual showing [of the jurisdictional elements"].[10] Finally, by holding that defendants' motion for summary judgment was improperly granted on the jurisdictional issue, we obviously express no view on the merits of plaintiffs' case, including other motions filed below.
 
 
 22
 For the foregoing reasons, the order of the district court granting defendants' motion for summary judgment and dismissing plaintiffs' claims is REVERSED and the case is REMANDED for further proceedings.
 
 
 
 *
 The Honorable Frank G. Theis, Senior Judge, U.S. District Court for the District of Kansas, sitting by designation
 
 
 [1]
 The individual plaintiffs, Konstantine Kalandros, Scott McGlothen, G. Edward Oswald, and Raymond Golden, are all Certified Registered Nurse Anesthetists ("CRNA"s). They are also shareholders of plaintiff TAA
 
 
 [2]
 The individual defendants in this appeal are David Heisterkamp, Joseph Verbrugge, Steven Caputo, Ronald Stevens, and Peter Press. All are medical doctors trained in anesthesiology. The Metz Group is an unincorporated association of physician anesthesiologists, including Drs. Heisterkamp, Verbrugge, Caputo, and Stevens. Anesthesia Associates, P.C. is Dr. Press' professional corporation. The doctors all practice at many Colorado hospitals, including defendant Humana Aurora
 
 
 [3]
 Plaintiffs already provided, and continued to provide, obstetric anesthesia at St. Luke's
 
 
 [4]
 The breach of contract claim is based on the allegation that Humana breached its agreement to grant independent clinical privileges to plaintiffs by requiring supervision of nurse anesthetists by physician anesthesiologists
 
 
 [5]
 McLain involved an allegation that real estate brokers in a particular area had engaged in a price-fixing conspiracy. The Supreme Court stated:
 "Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful."
 McLain, 444 U.S. at 242-43, 100 S.Ct. at 509. At another point, however, the Court stated:
 "To establish federal jurisdiction in this case, there remains only the requirement that respondents' activities which allegedly have been infected by a price-fixing conspiracy be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved."
 Id. at 246, 100 S.Ct. at 511 (quoting Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 745, 96 S.Ct. 1848, 1852-53, 48 L.Ed.2d 338 (1976)). In Crane, this court carefully examined McLain in light of earlier Supreme Court opinions, noting that "some language in McLain is less than clear." Crane, 637 F.2d at 721. We concluded that "[t]he analytical focus continues to be on the nexus, assessed in practical terms, between interstate commerce and the challenged activity." Id. at 724.
 
 
 [6]
 Defendants dispute whether plaintiffs' evidence shows the purchase of anesthesia supplies and equipment by both Humana and St. Luke's, as opposed to general hospital supplies and equipment. In response to plaintiffs' request for documents relating to vendors of anesthesia supplies and equipment, Humana and St. Luke's Hospitals sent to plaintiffs an accounts payable list for each hospital. In her affidavits, A. Marlene Gallmetzer, a legal assistant with plaintiffs' counsel, described her efforts to distill from those lists the volume of supplies and equipment purchased from vendors of anesthesia supplies. "Since the evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor," Windon Third Oil and Gas v. Fed. Deposit Ins., 805 F.2d 342, 346 (10th Cir.1986), cert. denied, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), we conclude that plaintiffs have made a sufficient showing at the summary judgment stage that the supplies and equipment listed were anesthesia supplies and equipment. See Celotex Corp. v. Catrett, 477 U.S. at 322, 106 S.Ct. at 2552
 
 
 [7]
 Plaintiffs' evidence was that from September 1, 1985 to July 31, 1986, 2.78% of Humana's patients resided out-of-state, and those patients accounted for 12.8% of Humana's billings. Humana had 43 out-of-state surgical patients, 2.6% of the total number of patients, during the third quarter of 1986. Those patients accounted for 5.1% of the total amount billed during that time period. It had no out-of-state obstetrical patients during that time period
 
 
 [8]
 In our view, it is an eminently reasonable inference, if not a certainty, that a not insubstantial portion of the total hospital revenues include payments for the provision of anesthesia. It is sufficient to establish the requisite nexus "as a matter of practical economics" between the defendants' challenged activity and interstate commerce. Similarly, it is a virtual certainty that a not insubstantial portion of the individual and group defendants' revenues received from out-of-state payors is attributable to anesthesia services performed at the hospitals where plaintiffs claim defendants have engaged in anticompetitive conduct. With regard to the use of out-of-state supplies and equipment, it is likewise undeniable that some portion of the total amounts of such supplies purchased by Humana and St. Luke's Hospitals were utilized by plaintiffs and defendants in the provision of anesthesia services
 In reaching the conclusion we do in this case, we are particularly aware of the difference in procedural posture between this case and Crane and Mishler. Whereas Crane and Mishler involved pre-discovery dismissals on the pleadings, which this court reversed as premature in this case the jurisdictional issue has been the subject of substantial discovery. The district court found this procedural difference significant. As the district court acknowledged, the procedural posture of a case does not affect the substantive law at issue. We simply disagree with the district court on the adequacy of plaintiff's showing given the procedural posture of this case.
 
 
 [9]
 As indicated, the volume of interstate commerce in insurance payments was substantial, whether viewed in terms of total revenues for obstetric and surgical cases or in terms of the portion of that total attributable to anesthesia. Similarly, the volume of interstate commerce in anesthesia supplies and equipment was substantial. Plaintiffs have alleged, and presented an expert's report opining that, plaintiffs were lower cost providers of anesthesia services than defendants, such that the exclusion of plaintiffs from the provision of anesthesia services in the Denver area would have an effect on the volume of interstate payments of insurance demonstrated in this case. See Crane, 637 F.2d at 725. Similarly, the exclusion of a competing group of anesthesia providers would affect the interstate commerce in supplies and equipment demonstrated in this case. See Cardio-Medical Assocs., Ltd. v. Crozer-Chester Medical Center, 721 F.2d 68, 74 (3d Cir.1983); Crane, 637 F.2d at 725. Finally, the fact that the number of out-of-state patients involved may be small does not necessarily defeat a conclusion that the burden on interstate commerce is not insubstantial. See Tarleton v. Meherry Medical College, 717 F.2d 1523, 1532 (6th Cir.1983)
 
 
 [10]
 We also note that the Supreme Court has recently granted review in Pinhas v. Summit Health, Ltd., 894 F.2d 1024 (9th Cir.1989), cert. granted --- U.S. ----, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990) on the issue of the adequacy of the nexus with interstate commerce for antitrust jurisdictional purposes. We obviously do not foreclose the possibility that the Supreme Court's decision in that case might permit either party to renew motions on jurisdictional grounds